Ryan W. Koppelman (SBN 290704)
Michael J. Newton (SBN 156225)
Katherine G. Rubschlager (SBN 328100)
**ALSTON & BIRD LLP**
950 Page Mill Road
Palo Alto, CA 94304
Telephone:   (650) 838-2000
Facsimile:   (650) 838-2001
ryan.koppelman@alston.com
mike.newton@alston.com
katherine.rubschlager@alston.com

Thomas W. Davison (*pro hac* forthcoming)
**ALSTON & BIRD LLP**
950 F Street NW
Washington, DC 20004
Telephone:   (202) 239-3300
Facsimile:   (202) 239-3333
tom.davison@alston.com

Evan W. Woolley (SBN 286385)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone:   (213) 576-1000
Facsimile:   (213) 576-1100
evan.woolley@alston.com

*Attorneys for Plaintiff*
*Universal Electronics Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL ELECTRONICS INC., a Delaware Company, <br><br> Plaintiff, <br><br> v. <br><br> ROKU, INC., a Delaware Company, <br><br> Defendant. | Case No. 8:20-cv-00701 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Universal Electronics Inc. ("UEI") hereby brings its Complaint for patent infringement against Defendant Roku, Inc. ("Roku") and alleges as follows:

## PARTIES

1.      Plaintiff UEI is a Delaware corporation that has a principal place of business located at 15147 N. Scottsdale Road, Suite H300, Scottsdale, Arizona 85254. UEI has offices in this judicial district at 201 E. Sandpointe Ave., Santa Ana, CA 92707.

2.      Defendant Roku is a Delaware corporation with a principal place of business located at 150 Winchester Circle, Los Gatos, CA 95032. It has offices in the judicial district at 2450 Colorado Ave., Santa Monica, CA 90404.

3.      Roku manufactures and sells streaming players and components therefor, enabling users to stream free or paid programming services.  Roku's infringing products are Roku's streaming players, including, but not limited to the following Roku products and models: Roku Ultra, Roku Ultra LT, Roku Express, Roku Express+, Roku Premier, Roku Premier+, Roku Streaming stick, Roku Streaming Stick+, Roku Streaming Stick+ HE, Roku Smart Soundbar, Roku 1, Roku 2, Roku 3, Roku 4, Model Nos.: 4670X, 4662X, 4661X, 4660X, 4640X, 4630X, 4620X, 4400X, 4230X, 4210X, 4200X, 3931X, 3930X, 3921X, 3920X, 3910X, 3900X, 3811X, 3810X, 3800X, 3710X, 3700X, 3600X, 3500X, 2720X, 2710X, 2700X, 2500X, 2450X, 2400X, and/or 9101R (the "Roku Streaming Players").  The Roku Voice Remote and Roku Enhanced Voice Remote ("Roku Remotes") infringe claims of one of the asserted patents.

4.      Roku also incorporates its technology into Roku TVs, including TCL branded Roku TVs. Infringing Roku TVs include but are not limited to TCL's 8, 6, 5, 4, and 3 series Roku TVs. Together the Roku Streaming Players, Roku Remotes, and Roku TVs are the "Accused Products."

## PATENTS IN-SUIT

5.      UEI owns and has standing to sue for infringement of U.S. Patent No. 7,969,514 (the "514 Patent"), entitled "Relaying Key Code Signals Through a Remote Control Device," which was duly and lawfully issued on June 28, 2011. A true and

correct copy of the 514 Patent is attached to this Complaint as Exhibit A.

6.     UEI owns and has standing to sue for infringement of U.S. Patent No. 9,641,785 (the "785 Patent"), entitled "System and Method for Configuring Controlling Device Functionality," which was duly and lawfully issued on May 2, 2017. A true and correct copy of the 785 Patent is attached to this Complaint as Exhibit B

7.     UEI owns and has standing to sue for infringement of U.S. Patent No. 10,325,486 (the "486 Patent"), entitled "System and Method for Optimized Appliance Control," which was duly and lawfully issued on June 18, 2019. A true and correct copy of the 509 Patent is attached to this Complaint as Exhibit C.

8.     UEI owns and has standing to sue for infringement of U.S. Patent No. 10,593,196 (the "196 Patent"), entitled "System and Method for Optimized Appliance Control," which was duly and lawfully issued on March 17, 2020. A true and correct copy of the 196 Patent is attached to this Complaint as Exhibit D.

9.     UEI owns and has standing to sue for infringement of U.S. Patent No. 10,600,317 (the "317 Patent"), entitled "System and Method for Simplified Setup of a Universal Remote Control" which was duly and lawfully issued on March 24, 2020. A true and correct copy of the 317 Patent is attached to this Complaint as Exhibit E.

10.     The 514, 785, 486, 196, and 317 Patents are collectively referred to as the Asserted Patents.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

12.     This Court has personal jurisdiction over Roku pursuant to the laws of the State of California, including California's Long Arm Statute, California Code of Civil Procedure § 410.10. Roku's principal place of business is in the state of California, and, as a result, Roku is subject to general jurisdiction here. Roku has committed acts of infringement in California infringing UEI's asserted patents in California, and, as a result, Roku is subject to specific jurisdiction here. In particular, Roku sells and offers to sell

hardware and software relating to remote control devices that infringe UEI's patents in California, and specifically in this judicial district. Roku does business in this judicial district relating to Roku's accused products, and has an office located in this district at 2450 Colorado Ave., Santa Monica, CA 90404. Roku is subject to personal jurisdiction because it has a regular and established place in this district and it sells, distributes, and licenses its products in this District, such that it should reasonably and fairly anticipate being brought into this Court.

13.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(d) and 1400(b). Roku has committed acts of infringement in this judicial district and has a regular and established place of business in this judicial district at 2450 Colorado Ave., Santa Monica, CA 90404. It occupies commercial office space at that address and employs numerous employees at this address, including its General Counsel.

## COUNT ONE

## INFRINGEMENT OF U.S. PATENT 7,969,514

14.    UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

15.    UEI is the owner of all rights, title, and interest in the 514 Patent, including the right to bring this suit for injunctive relief and damages.

16.    The 514 Patent generally relates to methods for setting up a universal remote control using interactive instructions. Manufacturers typically provide a remote control with an appliance, such as a television, or DVR, and, as such, different appliance types of different manufacturers are often commanded with different remote controls. To minimize the number of individual remote controls a user requires, universal remote controls have been developed. Prior art methods of setting up and configuring universal remote controls were demanding, exacting, and generally frustrating for many users. For example, documents containing the setup instructions and setup codes are often be lost, misplaced, or may be superseded as brand and/or model names evolve. The 514 Patent solves this problem by providing a system and method for enabling set up of a controlling

device capable of controlling a plurality of appliances, via an interactive instruction set and associated programming.

17.    The 514 Patent is valid and enforceable. The claims of the 514 Patent are directed to an inventive application in the field of remote control of consumer electronic devices. The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention. In particular, it was not well-understood, routine or conventional at the time of invention to provide on a controllable appliance programming to display interactive instructions to a user for setting up a universal remote control. Typically, the setup process involved referencing paper manuals and tables of codes.

18.    Roku has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 514 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to the Roku Streaming Players and the Roku TVs. Roku directly infringes one or more claims of the 514 Patent when Roku or those acting upon Roku's behalf, such as employees, officers, directors, principals, agents, consultants, and/or representatives, use the Roku Streaming Players or Roku TVs in the United States. Further, UEI contends that Roku's customers and/or end users directly infringe the method claims listed below when using the Roku Streaming Players or Roku TVs in the United States and Roku therefore indirectly infringes by way of inducement and/or contributory infringement.

19.    For purposes of example only, and without limitation, the Roku Streaming Players perform every element of claim 1 of the 514 Patent when used as intended by Roku. Roku also has infringed and continues to infringe at least one other claim of the 514 Patent.

20.    In particular, the method of claim 1 is "[a] method for providing interactive instructions to a user to set up a controlling device used to command a plurality of controllable appliances." involves "receiving a keystroke indicator signal from a remote

control device, wherein the keystroke indicator signal indicates a key on said remote control device that a user has selected." The Roku Streaming Players perform a method for providing interactive instructions to a user to set up a controlling device used to command a plurality of controllable appliances. For example, the Roku Streaming Players are each sold for importation, imported, or sold after importation with a remote controller (*e.g.*, controlling device). The Roku remote controller can be used to control a plurality of controllable appliances such as the Roku streaming devices and/or a TV. *See* https://support.roku.com/article/115013019828-how-do-i-set-up-my-roku-enhanced-remote-to-control-my-tv- ("Roku enhanced remotes incorporate both wireless and infrared (IR) technologies to seamlessly control your Roku streaming player and aspects of your TV.").

21.    The Roku TVs also perform a method for providing interactive instructions to a user to set up a controlling device used to command a plurality of controllable appliances. For example, the TCL Roku TVs are each sold for importation, imported, or sold after importation with a remote controller (*e.g.*, controlling device). The remote controller provided with the TCL Roku TVs can be used to control a plurality of controllable appliances. For example, the remote controller can be used to control the TCL Roku TVs as well as a soundbar and AVRs. *See* https://support.tclusa.com/televisions-setup-configurations/connecting-a-sound-bar-to-your-tv-using-arc ("Using HDMI® ARC reduces the number of cables required, and optionally lets you control the volume and mute state of the receiver by enabling system audio control.")

22.    The method of claim 1 further involves "providing on a first controllable appliance programming for the display of instructions to the user in response to input from the user via the controlling device." The Roku Streaming Players perform the step of providing on a first controllable appliance programming for the display of instructions to the user in response to input from the user via the controlling device. For example, the Roku OS on the Roku Streaming Players (*e.g.*, first controllable appliance) contains

programming that displays instructions to the user in response to input from the user via the Roku remote controller (*e.g.*, controlling device). Further, the Roku Streaming Players contain RAM and ROM for storing programming that is executed by a processor to display instructions to the user in response to input from the user via the controlling device. During the initial setup and when using the "Set up a remote for TV control" feature, the aforementioned programming enables Roku Streaming Players to display to the user instructions in the form of menus that are navigated via input through the Roku remote controller.

23.    The Roku TVs also perform the step of providing on a first controllable appliance programming for the display of instructions to the user in response to input from the user via the controlling device. For example, the TCL Roku TVs (*e.g.*, first controllable appliance) contain programming that displays instructions to the user in response to input from the user via the remote controller (*e.g.*, a controlling device). The user navigates to the "Control Other Devices (CEC)" menu by providing input via the Roku remote controller.

24.    The method of claim 1 further involves "providing input by the user to the first controllable appliance via the controlling device indicating that the controlling device is to be set up to command a second controllable appliance." The Roku Streaming Players perform the step of providing input by the user to the first controllable appliance via the controlling device indicating that the controlling device is to be set up to command a second controllable appliance. For example, when setting up the Roku remote controller for TV control, the user provides input to the Roku Streaming Product (*e.g.*, a first controllable appliance) via the Roku remote controller (*e.g.*, the controlling device) indicating that the Roku remote is to be set up to control a second controllable appliance (*e.g.*, a TV). User input to the Roku remote controller (e.g., clicking the "OK" button) navigates the "Control Your TV" menus and indicates that the Roku remote controller is to be set up to control the TV.

25.    The Roku TVs also perform the step of providing input by the user to the

first controllable appliance via the controlling device indicating that the controlling device is to be set up to command a second controllable appliance. For example, the Roku OS on the TCL Roku TVs (e.g., first controllable appliance) contains programming that displays instructions to the user in response to input from the user via the Roku remote controller (e.g., controlling device). Further, the TCL Roku TVs contain RAM and ROM for storing programming that is executed by a processor to display instructions to the user in response to input from the user via the controlling device. For example, within the "Control Other Devices (CEC)" menu, the user may provide input indicating that the remote control is to be set up to command an appliance connected via HDMI by selecting the option to "Search for CEC Devices" and pressing the "OK" button on the Roku remote controller.

26. The method of claim 1 further involves "accessing instruction data associated with the second controllable appliance by the programming provided on the first controllable appliance." The Roku Streaming Players perform the step of accessing instruction data associated with the second controllable appliance by the programming provided on the first controllable appliance. For example, setting up the Roku remote controller to control a TV connected to a Roku Streaming Player includes accessing instruction data associated with the second controllable appliance (*e.g.*, the TV) by the programming provided on the first controllable appliance (*e.g.*, Roku Streaming Player). The instruction data associated with the second controllable appliance (*e.g.*, the TV) include the data for guiding the user to set up the Roku remote controller for controlling the TV. For some TVs, the Roku Streaming Player will have information about the TV such that the user is immediately taken directly to screens asking "Is music playing?" and/or "Has the music stopped playing?" For other TVs, the Roku Streaming Player will request that the user enter a brand name.

27. The Roku TVs also perform the step of accessing instruction data associated with the second controllable appliance by the programming provided on the first controllable appliance. For example, the TCL Roku TV may access instruction associated

with a connected CEC device such as an AVR when the user selects the "Search for CEC Devices" option in the "Control Other Devices (CEC)" menu. The TCL Roku TV may also access instruction data associated with a connected CEC device such as an AVR by automatically detecting the presence of the device when it is first connected via HDMI.

28.     The method of claim 1 further involves "in response to input by the user via the controlling device, displaying the instruction data by the programming provided on the first controllable appliance for use by the user in setting up the controlling device to command the second controllable appliance." The Roku Streaming Players perform the step of in response to input by the user via the controlling device, displaying the instruction data by the programming provided on the first controllable appliance for use by the user in setting up the controlling device to command the second controllable appliance. For example, setting up the Roku remote controller to control a TV connected to a Roku Streaming Player includes displaying the instruction data by the programming provided on the first controllable appliance (*e.g.*, the Roku Streaming Player) for use by the user in setting up the controlling device to command the second controllable appliance (*e.g.*, the TV). The instruction data associated with the second controllable appliance (*e.g.*, the TV) include the data guiding the user to set up the Roku remote controller for controlling the TV. The Roku Streaming Players display interactive menus on the TV screen. The user inputs selections via the remote controller to navigate the menus for setting up TV control. In response to user input, the Roku Streaming Players displays various types of instruction data. The instruction data further includes screens guiding the user to set up the remote controller to control the TV. For example, in some instances, the Roku Streaming Player display screens asking "Is music playing?" and/or "Has the music stopped playing?" In other instances, the Roku Streaming Player will request that the user enter a brand name.

29.     The Roku TVs also perform the step of in response to input by the user via the controlling device, displaying the instruction data by the programming provided on the first controllable appliance for use by the user in setting up the controlling device to

COMPLAINT FOR PATENT INFRINGEMENT

command the second controllable appliance. For example, the user may provide input via the Roku remote controller (e.g., controlling device) by pressing the "OK" button when the option "Search for CEC Devices" is selected in the "Control Other Devices (CEC)" menu. The user may also provide input by selecting the type of device connected to the HDMI (ARC) port when the TCL Roku TV automatically detects the presence of a connected device like an AVR. Once the TCL Roku TV detects a connected device like an AVR, the user may select certain options in the "Control Other Devices (CEC)" menu to configure the Roku remote controller to control the AVR

30.    Roku has infringed and continues to infringe claims of the 514 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the Roku Streaming Players or Roku TVs.

31.    Roku has performed each and every element of claim 1 of the 514 Patent during at least its own product development and testing of the Roku Streaming Players or Roku TVs.

32.    Roku has indirectly infringed and continues to indirectly infringe at least claim 1 of the 514 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products. The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers, users, and retailers that offer for sale, sell, and use the Roku Streaming Players or Roku TVs.

33.    Roku is on notice of the 514 Patent at least as of the filing of this Complaint. In addition, Roku has had actual or constructive knowledge of the 514 Patent and its infringement prior to the filing of this Complaint. Further, at least as of September 2017, UEI informed Roku in writing that it had over 30 issued and pending patents covering its control solutions. It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 514 Patent. If it did not investigate UEI's patents as a result, it was acting in willful blindness of a reasonable likelihood of infringement.

COMPLAINT FOR PATENT INFRINGEMENT

Roku's own patents also have cited documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. Roku is a large public company that annually generates hundreds of millions of dollars of revenue, has ready access to the capital markets and has the ability to pay licensing fees or royalties to UEI. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 514 Patent. As such, Roku either knew or should have known about the existence of the 514 Patent and that creating features in its devices to practice that patent would induce infringement. Roku has not taken any steps of remedial action to mitigate its infringement. Roku has induced and continue to induce end users of the Roku Streaming Players or Roku TVs to infringe at least claim 1 of the 514 Patent within the meaning of 35 U.S.C. § 271(b).

34.     Roku's acts of inducement include making, using, selling, and offering to sell the Roku Streaming Players or Roku TVs, as well as Roku's creation and dissemination of promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the Roku Streaming Players or Roku TVs in an infringing manner. For example, the Roku Streaming Players and Roku TVs provide step-by-step instructions on how an end user should use these products in a manner that directly infringes the 514 Patent, and Roku also provides further instructions in the "Setup and Troubleshooting" section of its website. Roku, has a webpage, https://support.roku.com/en-gb/article/115013019828-how-to-set-up-your-roku-enhanced-remote-to-control-your-tv, dedicated to instructing users how to set up Roku Enhanced Remotes via wireless and infrared (IR) technologies to seamlessly control Roku streaming players and aspects of users' TVs. Examples include, without limitation, Roku's instructions on how to connect Roku devices to control other devices through HDMI and IR.

35.     Additionally, Roku has contributed to the infringement of claims of the 514 Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Roku has contributed to the end users infringement of the 514 Patent by, among other things, making, selling,

aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the Roku Streaming Players or Roku TVs, which Roku knew contain the software and features discussed above that are especially made or adapted by Roku for infringing uses of claims of the 514 Patent. The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use. The direct infringers for Roku's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the Roku Streaming Players or Roku TVs.

36.     Roku's direct and indirect infringement of the 514 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

37.     Roku's infringement of the 514 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages. More specifically, Roku knew or should have known about the 514 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the Roku Streaming Players or Roku TVs despite an objectively high likelihood that this conduct would infringe the 514 Patent.

38.     Roku's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 514 Patent. If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages.  Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief.  UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief.

## COUNT TWO

## INFRINGEMENT OF U.S. PATENT 9,641,785

39.     UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

40.     UEI is the owner of all rights, title, and interest in the 785 Patent, including the right to bring this suit for injunctive relief and damages.

41.     The 785 Patent generally relates to a system for configuring a remote control to issue commands directly to a target appliance (like a TV) or indirectly to the target appliance (*e.g.*, remote commands go to set-top box, then set-top box commands the TV) depending on whether the target appliance is responsive to commands via these communication paths. Digital interfaces such as HDMI connections facilitate the exchange of identity information, commands, and capability data between devices. The 785 patent uses data sent in messages between the remote control and a media source device (such as an STB) indicating whether a media sink device (such as a TV) is responsive to commands sent directly from the remote to the sink device and whether it is responsive to commands sent indirectly from the remote to the source device, then to the sink device. Based on this data, the remote control is automatically configured to communicate either directly or indirectly (*e.g.*, through the STB) to the sink device.

42.     The 785 Patent is valid and enforceable. The claims of the 785 Patent are directed to an inventive application in the field of remote control of consumer electronic devices. The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention. In particular, it was not well-understood, routine or conventional at the time of invention to automatically configure a remote control to communicate directly or indirectly with an appliance based on data received by the remote control from a media source device (such as an STB) indicating whether the appliance is responsive to various communication paths. For example, instead of using communication between the remote control and an STB, prior art systems required the user to manually determine whether an appliance was responsive to commands from the remote control.

43.     Roku has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 785 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United

States certain universal control devices, including but not limited to the Roku Streaming Players. Roku directly infringes one or more claims of the 785 Patent when Roku or those acting upon Roku's behalf, such as employees, officers, directors, principals, agents, consultants, and/or representatives, use the Roku Streaming Players in the United States. Further, UEI contends that Roku's customers and/or end users directly infringe the method claims listed below when using the Roku Streaming Players in the United States and Roku therefore indirectly infringes by way of inducement and/or contributory infringement.

44. For purposes of example only, and without limitation, the Roku Streaming Players perform every element of claim 1 of the 785 Patent when used as intended by Roku. Roku also has infringed and continues to infringe at least one other claim of the 785 Patent.

45. In particular, the system of claim 1 includes "a media source device." The Roku Streaming Players are a media source device. For example, "Roku devices give you access to 500,000+ movies and TV episodes from top free and paid channels, so you can stream almost anything." *See* https://www.roku.com/how-it-works.

46. The system of claim 1 further includes "a controlling device in communication with the media source device via a first communications link." The Roku Streaming Players include a controlling device (*e.g.*, Enhanced Remote) in communication with the media source device (*e.g.*, Roku Streaming Players) via a first communications link (*e.g.*, Wi-Fi Direct). For example, the Roku Streaming Players are each sold for importation, imported, or sold after importation with an Enhanced Remote controller (*e.g.*, controlling device). The Roku Enhanced Remote can be used to control a plurality of controllable appliances. The Roku Enhanced Remotes can be used to control the Roku streaming devices as well as a TV. *See* https://support.roku.com/article/115013019828-how-do-i-set-up-my-roku-enhanced-remote-to-control-my-tv- ("Roku enhanced remotes incorporate both wireless and infrared (IR) technologies to seamlessly control your Roku streaming player and aspects

COMPLAINT FOR PATENT INFRINGEMENT

of your TV.").

47.     The system of claim 1 further provides that "the media source device is programmed to provide the controlling device via the first communication link a message having data that indicates whether a media sink device coupled to the media source device is responsive or unresponsive to a command communication transmitted by the media sink device by the media source device via a second communications link between the media source device and the media sink device." In a system with the Roku Streaming Players and Enhanced Remotes, the media source device (*e.g.*, Roku Streaming Player) is programmed to provide to the controlling device (*e.g.*, Enhanced Remote) via the first communication link (*e.g.*, Wi-Fi Direct) a message having data which indicates whether a media sink device (*e.g.*, TV) coupled to the media source device (*e.g.*, Roku Streaming Player) is responsive or unresponsive to a command communication (*e.g.*, CEC command) transmitted to the media sink device (*e.g.*, TV) by the media source device (*e.g.*, Roku Streaming Player) via a second communications link (*e.g.*, HDMI) between the media source device (*e.g.*, Roku Streaming Player) and the media sink device (*e.g.*, TV). For example, the setup process for a Roku Streaming Player includes configuring the Enhanced Remote to control the TV's power and volume via CEC over HDMI or IR.

48.     The system of claim 1 further provides that "the controlling device is programmed to use the data within the message to automatically configure the controlling device such that the controlling device will respond to an activation of an input element of the controlling device." In the system with the Roku Streaming Players and Enhanced Remotes, the controlling device (*e.g.*, Enhanced Remote) is programmed to use the data within the message to automatically configure the controlling device (*e.g.*, Enhanced Remote) such that the controlling device (*e.g.*, Enhanced Remote) will respond to an activation of an input element of the controlling device. For example, the setup process for a Roku Streaming Player includes automatically configuring the Enhanced Remote to control the TV's power and volume via CEC over HDMI or IR. This process involves an

activation of an input element of the Enhanced Remote, such as the OK button.

49. The system of claim 1 further involves "issuing a communication directly to the media sink device via a third communication link between the controlling device and the media sink device to control the functional operation of the media sink device when the data in the message indicates that the media sink device is unresponsive to the command communication." The system of the Roku Streaming Players and Enhanced remotes involves issuing a communication directly to the media sink device (*e.g.*, TV) via a third communication link (*e.g.*, IR) between the controlling device (*e.g.*, Enhanced Remote) and the media sink device (*e.g.*, TV) to control the functional operation of the media sink device (*e.g.*, TV) when the data in the message indicates that the media sink device (*e.g.*, TV) is unresponsive to the command communication (*e.g.*, CEC). For example, during the setup process when the TV is unresponsive to CEC, the Enhanced Remote issues a communication directly to the TV via IR.

50. The system of claim 1 further involves "issuing a communication directly to the media source device via the first communications link to cause the media source device to issue a command to control the functional operation of the media sink device via the second communications link in the event that data indicates that the media sink device is responsive to the command communication." The system of the Roku Streaming Players and Enhanced remotes involves "issuing a communication directly to the media source device (*e.g.*, Roku Streaming Player) via the first communications link (*e.g.*, Wi-Fi Direct) to cause the media source device (*e.g.*, Roku Streaming Player) to issue a command to control the functional operation of the media sink device (*e.g.*, TV) via the second communications link (*e.g.*, HDMI) in the event that data indicates that the media sink device (*e.g.*, TV) is responsive to the command communication (*e.g.*, CEC). For example, Roku Streaming Players such as the Roku Ultra connect to a TV via HDMI. During the setup process in the event that the data indicates that the TV is responsive to CEC commands, the Enhanced Remote issues a communication directly to the Roku Streaming Player via Wi-Fi Direct to cause the Roku Streaming Player to issue a

command to control the functional operation of the TV via HDMI.

51.     Roku has infringed and continues to infringe claims of the 785 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the Roku Streaming Players.

52.     Roku has performed each and every element of claim 1 of the 785 Patent during at least its own product development and testing of the Roku Streaming Players.

53.     Roku has indirectly infringed and continues to indirectly infringe at least claim 1 of the 785 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products. The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers, users, and retailers that offer for sale, sell, and use the Roku Streaming Players.

54.     Roku is on notice of the 785 Patent at least as of the filing of this Complaint. In addition, Roku has had actual or constructive knowledge of the 785 Patent and its infringement prior to the filing of this Complaint. Further, at least as of September 2017, UEI informed Roku in writing that it had over 30 issued and pending patents covering its control solutions. It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 785 Patent. If it did not investigate UEI's patents as a result, it was acting in willful blindness of a reasonable likelihood of infringement. Roku's own patents also have cited documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. Roku is a large public company that annually generates hundreds of millions of dollars of revenue, has ready access to the capital markets and has the ability to pay licensing fees or royalties to UEI. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 785 Patent. As such, Roku either knew or should have known about the existence of the 785 Patent and that creating features in its devices to practice that patent would induce infringement. Roku has not taken any steps of remedial action to mitigate its infringement. Roku has induced and continue to induce end users of

the Roku Streaming Players or Roku TVs to infringe at least claim 1 of the 785 Patent within the meaning of 35 U.S.C. § 271(b).

55. Roku's acts of inducement include making, using, selling, and offering to sell the Roku Streaming Players, as well as Roku's creation and dissemination of promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the Roku Streaming Players in an infringing manner. For example, the Roku Streaming Players provide step-by-step instructions on how an end user should use these products in a manner that directly infringes the 785 Patent, and Roku also provides further instructions in the "Setup and Troubleshooting" section of its website. Roku, has a webpage, https://support.roku.com/en-gb/article/115013019828-how-to-set-up-your-roku-enhanced-remote-to-control-your-tv, dedicated to instructing users how to set up Roku Enhanced Remotes via wireless and infrared (IR) technologies to seamlessly control Roku streaming players and aspects of users' TVs. Examples include, without limitation, Roku's instructions on how to connect Roku devices to control other devices through HDMI and IR.

56. Additionally, Roku has contributed to the infringement of claims of the 785 Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Roku has contributed to the end users infringement of the 785 Patent by, among other things, making, selling, aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the Roku Streaming Players, which Roku knew contain the software and features discussed above that are especially made or adapted by Roku for infringing uses of claims of the 785 Patent. The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use. The direct infringers for Roku's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the Roku Streaming Players.

57. Roku's direct and indirect infringement of the 785 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

58.     Roku's infringement of the 785 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages. More specifically, Roku knew or should have known about the 785 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the Roku Streaming Players despite an objectively high likelihood that this conduct would infringe the 785 Patent. Roku's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 785 Patent. If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages. Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief. UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief.

## COUNT THREE
## INFRINGEMENT OF U.S. PATENT 10,325,486

59.     UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

60.     UEI is the owner of all rights, title, and interest in the 486 Patent, including the right to bring this suit for injunctive relief and damages.

61.     The 486 Patent generally relates to a method for configuring a user interface presented on a home theater device (like a TV) by adding an icon representing a controllable function of an appliance (such as an audiovisual receiver ("AVR") based on connection data received from the appliance such that selection of that icon via input by a remote control controls the function of the appliance identified by the icon.

62.     The 486 Patent is valid and enforceable. The claims of the 486 Patent are directed to an inventive application in the field of remote control of consumer electronic devices. The combination of claim elements was not well-understood, routine, or

conventional to those in the field at the time of invention. In particular, it was not well-understood, routine or conventional at the time of invention to

configure user interfaces by adding icons representative of the controllable function of an appliance based on connection data received from the appliance.

63.    Roku has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 486 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to the Roku Streaming Players.  Roku directly infringes one or more claims of the 486 Patent when Roku or those acting upon Roku's behalf, such as employees, officers, directors, principals, agents, consultants, and/or representatives, use the Roku Streaming Players in the United States. Further, UEI contends that Roku's customers and/or end users directly infringe the method claims listed below when using the Roku Streaming Players in the United States and Roku therefore indirectly infringes by way of inducement and/or contributory infringement.

64.    For purposes of example only, and without limitation, the Roku TVs perform every element of claim 1 of the 486 Patent when used as intended by Roku. Roku also has infringed and continues to infringe at least one other claim of the 486 Patent.

65.    In particular, the method of claim 1 is "[a] method for configuring a user interface that is caused to be presented by a home theater device in a display device associated with the home theater device." The Roku TVs perform a method for configuring a user interface that is caused to be presented by a home theater device in a display device associated with the home theater device. For example, the TCL Roku TVs are a home theater device with an associated display. *See* https://www.tclusa.com/products/home-theater/3-series/tcl-32-class-3-series-fhd-led-roku-smart-tv-32s327. The TCL Roku TVs contain various user interfaces, including home screen interface.

66.     The method of claim 1 further involves "receiving at the home theater device from a controllable appliance in communication with the home theater device via use of a high definition multimedia ("HDMI") connection data that functions to identify a controllable function of the controllable appliance." The Roku's TVs perform the step of receiving at the home theater device from a controllable appliance in communication with the home theater device via use of a high definition multimedia ("HDMI") connection data that functions to identify a controllable function of the controllable appliance. For example, an audiovisual receiver ("AVR") is an example of a controllable appliance that may be connected to the TCL Roku TV via an HDMI connection. The TCL Roku TV (*e.g.*, home theater device) receives CEC data (*e.g.*, connection data) from the connected AVR (*e.g.*, controllable appliance). The CEC data functions to identify functions of the soundbar, such as volume control and power.

67.     The method of claim 1 further involves "automatically adding by the home theater device to the user interface an icon representative of the controllable function of the controllable appliance that was identified by the data received from the controllable appliance." The Roku TVs perform the step of automatically adding by the home theater device to the user interface an icon representative of the controllable function of the controllable appliance that was identified by the data received from the controllable appliance.  Without any connected audio devices, the volume icon for the TCL Roku TV is a conical speaker. After connecting an AVR via HDMI, the TCL Roku TV (*e.g.*, home theater device) will automatically add an icon to the TCL Roku TV home screen representative of the connected soundbar (*e.g.*, controllable appliance). Specifically, a volume icon depicting a speaker, a circular volume scrollbar, and a volume level number appear in the upper right of the screen as the AVR is connected to the TCL Roku TV via an HDMI connection. The scrollbar and number correspond to the volume up/down functions of the AVR.

68.     The method of claim 1 further involves "in response to the home theater device receiving from a controlling device a command transmission that is indicative of a

selection of the added icon from the user interface when the user interface is displayed in the display device associated with the home theater device." The Roku TVs perform the step of in response to the home theater device receiving from a controlling device a command transmission that is indicative of a selection of the added icon from the user interface when the user interface is displayed in the display device associated with the home theater device. For example, the user selects the AVR volume icon by pressing the volume up, volume down, or mute buttons on the Roku remote controller. The Roku remote controller transmits these commands to the TCL Roku TV via IR.

69.     The method of claim 1 further involves "causing the home theater device to issue a command to at least the controllable appliance to control at least the controllable function of the controllable appliance that was identified by the data received from the controllable appliance." The Roku TVs perform the step of causing the home theater device to issue a command to at least the controllable appliance to control at least the controllable function of the controllable appliance that was identified by the data received from the controllable appliance. When the user selects the AVR icon by pressing the volume up, volume down, or mute buttons on the Roku remote controller, the TCL Roku TV (e.g., home theater device), issues commands to the AVR to control the volume.

70.     Roku has infringed and continues to infringe claims of the 486 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the Roku TVs.

71.     Roku has performed each and every element of claim 1 of the 486 Patent during at least its own product development and testing of the Roku TVs.

72.     Roku has indirectly infringed and continues to indirectly infringe at least claim 1 of the 486 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products. The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers, users, and retailers that offer for sale, sell, and use the Roku TVs.

73.     Roku is on notice of the 486 Patent at least as of the filing of this Complaint.

In addition, Roku has had actual or constructive knowledge of the 486 Patent and its infringement prior to the filing of this Complaint. Further, at least as of September 2017, UEI informed Roku in writing that it had over 30 issued and pending patents covering its control solutions. It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 486 Patent. If it did not investigate UEI's patents as a result, it was acting in willful blindness of a reasonable likelihood of infringement. Roku's own patents also have cited documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. Roku is a large public company that annually generates hundreds of millions of dollars of revenue, has ready access to the capital markets and has the ability to pay licensing fees or royalties to UEI. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 486 Patent. As such, Roku either knew or should have known about the existence of the 486 Patent and that creating features in its devices to practice that patent would induce infringement. Roku has not taken any steps of remedial action to mitigate its infringement. Roku has induced and continue to induce end users of the Roku Streaming Players to infringe at least claim 1 of the 486 Patent within the meaning of 35 U.S.C. § 271(b).

74.     Roku's acts of inducement include making, using, selling, and offering to sell the Roku TVs, as well as Roku's creation and dissemination of promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the Roku TVs in an infringing manner. For example, the Roku TVs provide step-by-step instructions on how an end user should use these products in a manner that directly infringes the 486 Patent, and Roku also provides further instructions in the "Setup and Troubleshooting" section of its website. Roku, has a webpage, https://support.roku.com/en-gb/article/115013019828-how-to-set-up-your-roku-enhanced-remote-to-control-your-tv, dedicated to instructing users how to set up Roku Enhanced Remotes via wireless and infrared (IR) technologies to seamlessly control Roku streaming players and aspects of users' TVs. Examples include, without limitation,

Roku's instructions on how to connect Roku devices to control other devices through HDMI and IR.

75.    Additionally, Roku has contributed to the infringement of claims of the 486 Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Roku has contributed to the end users infringement of the 486 Patent by, among other things, making, selling, aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the Roku TVs, which Roku knew contain the software and features discussed above that are especially made or adapted by Roku for infringing uses of claims of the 486 Patent. The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use. The direct infringers for Roku's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the Roku Streaming Players.

76.    Roku's direct and indirect infringement of the 486 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

77.    Roku's infringement of the 486 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages. More specifically, Roku knew or should have known about the 486 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the Roku Streaming Players despite an objectively high likelihood that this conduct would infringe the 486 Patent. Roku's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 486 Patent. If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages. Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief. UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief.

## COUNT FOUR

## INFRINGEMENT OF U.S. PATENT 10,593,196

78.     UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

79.     UEI is the owner of all rights, title, and interest in the 196 Patent, including the right to bring this suit for injunctive relief and damages.

80.     Controlling devices, for example remote controls, for use in issuing commands to entertainment and other appliances, and the features and functionality provided by such controlling devices are well known in the art. At the time of invention, the recent proliferation of wireless and wired communication and/or digital interconnection methods such as WiFi, Bluetooth, HDMI, etc., amongst and between appliances has resulted in a corresponding proliferation of such communication protocols and command formats. Confusion, mis-operation, or other problems were common when users or manufacturers of a controlling device, such as a remote control, attempted to take advantage of the enhanced features and functionalities of these new control methods because prior generation appliances and adoption of such newer methods was inconsistent and fragmented. The 196 Patent solves this problem by providing methods for taking advantage of improved appliance control communication methods and/or command formats in a reliable manner which is largely transparent to a user and/or seamlessly integrated with legacy appliance control technology.

81.     The 196 Patent is valid and enforceable. The claims of the 196 Patent are directed to an inventive application in the field of remote control of consumer electronic devices. The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention. In particular, it was not well-understood, routine or conventional at the time of invention to have a media device such as an STB contain instructions to configure a remote control to communicate directly with an appliance when a communication from the appliance indicates that the appliance will not be responsive to a command sent from the STB to the appliance.

COMPLAINT FOR PATENT INFRINGEMENT

82.     Roku has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 196 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to the Roku Streaming Players. Roku directly infringes one or more claims of the 196 Patent when Roku or those acting upon Roku's behalf, such as employees, officers, directors, principals, agents, consultants, and/or representatives, use the Roku Streaming Players in the United States. Further, UEI contends that Roku's customers and/or end users directly infringe the method claims listed below when using the Roku Streaming Players in the United States and Roku therefore indirectly infringes by way of inducement and/or contributory infringement.

83.     For purposes of example only, and without limitation, the Roku Streaming Players perform every element of claim 1 of the 196 Patent when used as intended by Roku. Roku also has infringed and continues to infringe at least one other claim of the 196 Patent.

84.     In particular, the device of claim 1 is "[a] first media device." The Roku Streaming Players are a first media device.

85.     The device of device 1 further includes a "processing device." The Roku Streaming Players contain a processing device. For example, the Roku Streaming Players contain a processing device such as a quad-core processor that is coupled to the receiver and the transmitter

86.     The device of device 1 further includes "a high-definition multimedia interface communications port, coupled to the processing device, for communicatively connecting the first media device to a second media device." The Roku Streaming Players contain a high-definition multimedia interface communications port, coupled to the processing device, for communicatively connecting the first media device to a second media device. For example, the Roku Streaming Players contain circuitry associated with a High-Definition Multimedia Interface ("HDMI") connection to send data via the HDMI

connection. The Roku Streaming Players may be connected to a TV (*e.g.*, a second media device) via HDMI.

87.     The device of claim 1 further includes "a transmitter, coupled to the processing device, for communicatively coupling the first media device to a remote control device." The Roku Streaming Players contain a transmitter, coupled to the processing device, for communicatively coupling the first media device to a remote control device. For example, the Roku Streaming Players program Roku remotes with remote codes for external devices, such as TVs. *See* https://support.roku.com/article/360004786894-why-is-my-roku-enhanced-remote-not-controlling-volume-and-power-on-my-tv-. This programming is conducted via a wireless connection such as Wi-Fi or Wi-Fi Direct.

88.     The device of claim 1 further includes "a memory device, coupled to the processing device, having stored thereon processor executable instruction." The Roku Streaming Players contain a memory device, coupled to the processing device, having stored thereon processor executable instructions. For example, each Roku Streaming Player includes memory (*e.g.*, RAM or ROM) that stores the Roku OS software.

89.     The device of claim 1 further provides that "the instructions, when executed by the processing device, cause the first media device to be configured to transmit a first command directly to the second media device, via use of the high-definition multimedia communications port, to control an operational function of the second media device when a first data provided to the first media device indicates that the second media device will be responsive to the first command." The Roku Streaming Players contain instructions wherein the instructions, when executed by the processing device, cause the first media device to be configured to transmit a first command directly to the second media device, via use of the high-definition multimedia communications port, to control an operational function of the second media device when a first data provided to the first media device indicates that the second media device will be responsive to the first command. For example, during the setup process for TV control by the Roku remote, the Roku

COMPLAINT FOR PATENT INFRINGEMENT

Streaming Player (*e.g.*, the first media device) determines for certain types of TVs that the Roku remote controller is capable of controlling the volume of the TV (*e.g.*, second media device) using CEC communication (*e.g.*, using an HDMI port). The Roku Streaming Player prompts the user to confirm that CEC commands work to control the TV volume (which sends a first data to the Roku Streaming Player indicating that the TV is responsive to the CEC volume command). In response to the determination that the TV responds to CEC commands, the Roku Streaming Player configures itself to use CEC commands as the default communication protocol. The Roku Streaming Player also issues a communication to the Roku remote to cause the Roku remote to configure itself to send a command to the Roku Streaming Player (*e.g.*, first media device) for causing the Roku Streaming Player to communicate the command for controlling the functional operation of the second media device (*e.g.*, volume up/down and/or power on/off), to the controllable device via CEC. The configuration of the Roku remote controller is shown by the different direct and indirect communication and command configurations of the Roku remote controller.

90.     The method of claim 1 further provides that the instructions "cause the first media device to be configured to transmit a second data to a remote control device, via use of the transmitter, for use in configuring the remote control device to transmit a second command directly to the second media device, via use of a communicative connection between the remote control device and the second media device, to control the operational function of the second media device when the first data provided to the first media device indicates that the second media device will be unresponsive to the first command." The Roku Streaming Players contain instructions that cause the first media device to be configured to transmit a second data to a remote control device, via use of the transmitter, for use in configuring the remote control device to transmit a second command directly to the second media device, via use of a communicative connection between the remote control device and the second media device, to control the operational function of the second media device when the first data provided to the first

COMPLAINT FOR PATENT INFRINGEMENT

media device indicates that the second media device will be unresponsive to the first command. For example, to confirm if the TV is responsive or unresponsive to commands sent over HDMI, the Roku Streaming Player walks the user through a setup process. After the user confirms whether music is playing, the Roku Streaming Player tests commands to mute the music. The screen queries whether the music has stopped playing. If the music has stopped playing, that means the command that was just sent succeeded in muting the TV. If CEC commands do not successfully mute the TV, the Roku remote will test IR codes. IR communication is a communicative connection between the remote control device and the TV (*e.g.*, second media device). If the IR code successfully mutes the TV, the Roku Streaming Player issues a communication to the Roku remote controller to configure itself to send commands directly to the TV for controlling operational functions (*e.g.*, volume up/down and/or power on/off) of the TV via use of a wireless communication protocol (*e.g.*, IR). The configuration of the Roku remote controller is shown by the different direct and indirect communication and command configurations of the Roku remote controller.

91.   Roku has infringed and continues to infringe claims of the 196 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the Roku Streaming Players.

92.   Roku has performed each and every element of claim 1 of the 196 Patent during at least its own product development and testing of the Roku Streaming Players.

93.   Roku has indirectly infringed and continues to indirectly infringe at least claim 1 of the 196 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products. The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers, users, and retailers that offer for sale, sell, and use the Roku Streaming Players.

94.   Roku is on notice of the 196 Patent at least as of the filing of this Complaint. In addition, Roku has had actual or constructive knowledge of the 196 Patent and its

infringement prior to the filing of this Complaint. Further, at least as of September 2017, UEI informed Roku in writing that it had over 30 issued and pending patents covering its control solutions. It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 196 Patent. If it did not investigate UEI's patents as a result, it was acting in willful blindness of a reasonable likelihood of infringement. Roku's own patents also have cited documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. Roku is a large public company that annually generates hundreds of millions of dollars of revenue, has ready access to the capital markets and has the ability to pay licensing fees or royalties to UEI. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 196 Patent. As such, Roku either knew or should have known about the existence of the 196 Patent and that creating features in its devices to practice that patent would induce infringement. Roku has not taken any steps of remedial action to mitigate its infringement. Roku has induced and continues to induce end users of the Roku Streaming Players to infringe at least claim 1 of the 196 Patent within the meaning of 35 U.S.C. § 271(b).

95.     Roku's acts of inducement include making, using, selling, and offering to sell the Roku Streaming Players, as well as Roku's creation and dissemination of promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the Roku Streaming Players in an infringing manner. For example, the Roku Streaming Players provide step-by-step instruction on how an end user should use these products in a manner that directly infringes the 196 Patent, and Roku also provides further instruction in the "Setup and Troubleshooting" section of its website. Roku, has a webpage, https://support.roku.com/en-gb/article/115013019828-how-to-set-up-your-roku-enhanced-remote-to-control-your-tv, dedicated to instructing users how to set up Roku Enhanced Remotes via wireless and infrared (IR) technologies to seamlessly control Roku streaming players and aspects of users' TVs. Examples include, without limitation, Roku's instructions on how to connect Roku devices to

control other devices through HDMI and IR.

96.     Additionally, Roku has contributed to the infringement of claims of the 196 Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Roku has contributed to the end users infringement of the 196 Patent by, among other things, making, selling, aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the Roku Streaming Players, which Roku knew contain the software and features discussed above that are especially made or adapted by Roku for infringing uses of claims of the 196 Patent. The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use. The direct infringers for Roku's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the Roku Streaming Players.

97.     Roku's direct and indirect infringement of the 196 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

98.     Roku's infringement of the 196 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages. More specifically, Roku knew or should have known about the 196 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the Roku Streaming Players despite an objectively high likelihood that this conduct would infringe the 196 Patent. Roku's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 196 Patent. If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages. Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief. UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief.

## COUNT FIVE

## INFRINGEMENT OF U.S. PATENT 10,600,317

99.    UEI incorporates the previous paragraphs of this Complaint as if fully set forth herein.

100.    UEI is the owner of all rights, title, and interest in the 317 Patent, including the right to bring this suit for injunctive relief and damages.

101.    Manufacturers typically provide a remote control with an appliance, such as a television, or DVR, and, as such, different appliance types of different manufacturers are often commanded with different remote controls. To minimize the number of individual remote controls a user requires, universal remote controls have been developed. Prior art methods of setting up and configuring universal remote controls were demanding, exacting, and generally frustrating for many users. For example, documents containing the setup instructions and setup codes are often be lost, misplaced, or may be superseded as brand and/or model names evolve. The '317 Patent solves this problem by providing a device for enabling set up of a controlling device capable of controlling a plurality of appliances, via an interactive instruction set and associated programming.

102.    The 317 Patent is valid and enforceable. The claims of the 317 Patent are directed to an inventive application in the field of remote control of consumer electronic devices. The combination of claim elements was not well-understood, routine, or conventional to those in the field at the time of invention. In particular, it was not well-understood, routine or conventional at the time to use interactive instructions to set up a remote control to control an appliance based on type and brand information of the appliance.

103.    Roku has infringed and continues to infringe literally and/or through the doctrine of equivalents, one or more claims of the 317 Patent, including but not limited to claim 1, by using, making, offering to sell, and/or selling without authority in the United States certain universal control devices, including but not limited to the Roku Streaming

Players and the Roku TVs.  Roku directly infringes one or more claims of the 317 Patent when Roku or those acting upon Roku's behalf, such as employees, officers, directors, principals, agents, consultants, and/or representatives, use the Roku Streaming Players or Roku TVs in the United States. Further, UEI contends that Roku's customers and/or end users directly infringe the method claims listed below when using the Roku Streaming Players or Roku TVs in the United States and Roku therefore indirectly infringes by way of inducement and/or contributory infringement.

104.   For purposes of example only, and without limitation, the Roku Streaming Players perform every element of claim 1 of the 317 Patent when used as intended by Roku. Roku also has infringed and continues to infringe at least one other claim of the 317 Patent.

105.   In particular, the device of claim 1 is "[a] controlled device." The Roku Streaming Players are a controlled device.

106.   The Roku TVs are also a controlled device.

107.   The device of claim 1 further includes "a receiver for receiving communications from a remotely located controlling device." The Roku Streaming Players contain a receiver for receiving communications from a remotely located controlling device. For example, the Roku Streaming Players use wireless communications to communicate with a Roku remote control by way of an IR or a wireless receiver.

108.   The Roku TVs also contain a receiver for receiving communications from a remotely located controlling device. For example, the TCL Roku TVs use wireless communications to communicate with a Roku remote control, which requires either an IR or a wireless receiver.

109.   The device of claim 1 further includes "a transmitter for transmitting communications to a display device coupled to the controlled device." The Roku Streaming Devices contain a transmitter for transmitting communications to a display device coupled to the controlled device. For example, the Roku Streaming Players

COMPLAINT FOR PATENT INFRINGEMENT

contain circuitry associated with a High-Definition Multimedia Interface ("HDMI") connection to send data via the HDMI connection.

110.  The Roku TVs also include contain a transmitter for transmitting communications to a display device coupled to the controlled device. For example, the TCL Roku TVs contain circuitry associated with transmitting communications received via the wireless receiver and processed by the processor to the TV screen (*e.g.*, display device).

111.  The device of claim 1 further includes "a processing device coupled to the receiver and the transmitter." The Roku Streaming Players contain a processing device coupled to the receiver and the transmitter. For example, the Roku Streaming Players contain a processing device such as a quad-core processor that is coupled to the receiver and the transmitter.

112.  The Roku TVs also include a processing device coupled to the receiver and the transmitter. For example, and upon information and belief, the exemplary TCL Roku TV 32S327 contains a dual core processor that is coupled to the receiver and the transmitter.

113.  The device of claim 1 further includes "a memory storing executable instructions, wherein the instructions, when executed by the processing device, cause the controlled device." The Roku Streaming Players contain a memory storing executable instructions, wherein the instructions, when executed by the processing device, cause the controlled device to practice the claimed invention. For example, each Roku Streaming Player includes memory (*e.g.*, RAM or ROM) that stores the Roku OS software.

114.  The Roku TVs also contain a memory storing executable instructions, wherein the instructions, when executed by the processing device, cause the controlled device to practice the claimed invention. For example, each TCL Roku TV includes the Roku OS software.

115.  The device of claim 1 further includes instructions that "automatically progress through a plurality of setup procedure steps in response to each of a plurality of

communications received via use of the receiver from the controlling device." The Roku Streaming Players contain instructions to automatically progress through a plurality of setup procedure steps in response to each of a plurality of communications received via use of the receiver from the controlling device. For example, during the initial setup and when using the "Set up a remote for TV control" feature, the aforementioned programming enables Roku Streaming Players to automatically progress through a plurality of setup procedure steps in response to communications received from the Roku remote controller. For example, during the initial setup process and when setting up the Roku remote controller to control the TV, the programming on the Roku Streaming players cause the TV screen (e.g., display device) to display screens guiding the user through the setup process (*e.g.*, instructional information). For some TVs, the Roku Streaming Player will have information about the TV such that the user is immediately taken directly to screens asking "Is music playing?" and/or "Has the music stopped playing?" or other TVs, the Roku Streaming Player will request that the user enter a brand name.

116.   The Roku TVs also contain instructions that automatically progress through a plurality of setup procedure steps in response to each of a plurality of communications received via use of the receiver from the controlling device. For example, when setting up an AVR, the TCL Roku TVs automatically progress through a plurality of setup procedure steps such as when the TCL Roku TVs receive a communication from the Roku remote control that the "Search for CEC Devices" menu item has been selected.

117.   The device of claim 1 further includes instructions that "transmit to the display device via use of the transmitter communications to cause the display device to display instructional information to a user while progressing through the plurality of setup procedure steps." The Roku Streaming Players contain instructions to transmit to the display device via use of the transmitter communications to cause the display device to display instructional information to a user while progressing through the plurality of setup procedure steps. For example, during the initial setup process and when setting up

COMPLAINT FOR PATENT INFRINGEMENT

the Roku remote controller to control the TV, the programming on the Roku Streaming players cause the TV screen (*e.g.*, display device) to display screens guiding the user through the setup process (*e.g.*, instructional information). For some TVs, the Roku Streaming Player will have information about the TV such that the user is immediately taken directly to screens asking "Is music playing?" and/or "Has the music stopped playing?" For other TVs, the Roku Streaming Player will request that the user enter a brand name.

118.   The Roku TVs also contain instructions that transmit to the display device via use of the transmitter communications to cause the display device to display instructional information to a user while progressing through the plurality of setup procedure steps. For example, during the process for setting up an AVR, the programming on the TCL Roku TVs cause the TV screen (*e.g.*, display device) to display screens guiding the user through the setup process (*e.g.*, instructional information).

119.   The device of claim 1 further includes instructions that "in response to at least a type and brand of a target device to be controlled via use of the controlling device being identified via use of the plurality of setup procedure steps, select at least one command code set which has been predetermined to be likely to be usable by the controlling device to control operational functions of the target device when subsequently provisioned to the controlling device.

120.   The Roku TVs also contain instructions that in response to at least a type and brand of a target device to be controlled via use of the controlling device being identified via use of the plurality of setup procedure steps, select at least one command code set which has been predetermined to be likely to be usable by the controlling device to control operational functions of the target device when subsequently provisioned to the controlling device. For example, during the process for setting up an AVR, the programming on TCL Roku TVs select a CEC code set to control the AVR.  The Roku TCL TVs identify the CEC code set based on the type (*e.g.*, audio device) and brand (*e.g.*, Denon) of the connected device,

121.   Roku has infringed and continues to infringe claims of the 317 Patent within the meaning of 35 U.S.C. § 271(a) through the foregoing activities, including at least making, using, selling, offering for sale, and/or importing the Roku Streaming Players or Roku TVs.

122.   Roku has performed each and every element of claim 1 of the 317 Patent during at least its own product development and testing of the Roku Streaming Players or Roku TVs.

123.   Roku has indirectly infringed and continues to indirectly infringe at least claim 1 of the 317 Patent under § 271(b) by knowingly and actively inducing infringement of those claims by its customers and end users of its products. The direct infringers that Roku has induced to infringe include, without limitation, Roku's customers, users, and retailers that offer for sale, sell, and use the Roku Streaming Players or Roku TVs.

124.   Roku is on notice of the 317 Patent at least as of the filing of this Complaint. In addition, Roku has had actual or constructive knowledge of the 317 Patent and its infringement prior to the filing of this Complaint. Further, at least as of September 2017, UEI informed Roku in writing that it had over 30 issued and pending patents covering its control solutions. It is believed that Roku investigated UEI's patents as a result and gained actual knowledge of the 317 Patent. If it did not investigate UEI's patents as a result, it was acting in willful blindness of a reasonable likelihood of infringement. Roku's own patents also have cited documents referring to UEI's patents over 290 times, which made Roku aware of UEI's patents. Roku is a large public company that annually generates hundreds of millions of dollars of revenue, has ready access to the capital markets and has the ability to pay licensing fees or royalties to UEI. As a result, Roku at least engaged in willful blindness by taking deliberate actions to avoid confirming a high probability of infringement of the 317 Patent. As such, Roku either knew or should have known about the existence of the 317 Patent and that creating features in its devices to practice that patent would induce infringement. Roku has not taken any steps of remedial

action to mitigate its infringement. Roku has induced and continue to induce end users of the Roku Streaming Players or Roku TVs to infringe at least claim 1 of the 317 Patent within the meaning of 35 U.S.C. § 271(b).

125.  Roku's acts of inducement include making, using, selling, and offering to sell the Roku Streaming Players or Roku TVs, as well as Roku's creation and dissemination of promotional materials, marketing materials, and instruction guides that teach and encourage end users to use the Roku Streaming Players or Roku TVs in an infringing manner. For example, the Roku Streaming Players and Roku TVs provide step-by-step instructions on how an end user should use these products in a manner that directly infringes the 317 Patent, and Roku also provides further instructions in the "Setup and Troubleshooting" section of its website. Roku, has a webpage, https://support.roku.com/en-gb/article/115013019828-how-to-set-up-your-roku-enhanced-remote-to-control-your-tv, dedicated to instructing users how to set up Roku Enhanced Remotes via wireless and infrared (IR) technologies to seamlessly control Roku streaming players and aspects of users' TVs. Examples include, without limitation, Roku's instructions on how to connect Roku devices to control other devices through HDMI and IR.

126.  Additionally, Roku has contributed to the infringement of claims of the 317 Patent within the meaning of 35 U.S.C. § 271(c). Specifically, Roku has contributed to the end users infringement of the 317 Patent by, among other things, making, selling, aiding, assisting, authorizing, advertising, marketing, promoting, providing for, and/or encouraging the offer for sale, sale, and use of the Roku Streaming Players or Roku TVs, which Roku knew contain the software and features discussed above that are especially made or adapted by Roku for infringing uses of claims of the 317 Patent. The software and features discussed above are not staple articles of commerce suitable for substantial non-infringing use. The direct infringers for Roku's contributory infringement include, without limitation, its customers, users, and retailers that offer for sale, sell, and use the Roku Streaming Players or Roku TVs.

127.   Roku's direct and indirect infringement of the 317 Patent has injured UEI, and UEI is entitled to recover damages adequate to compensate it for such infringement.

128.   Roku's infringement of the 317 Patent has been willful, wanton, malicious, and/or deliberate and constitutes egregious behavior justifying an award of enhanced damages. More specifically, Roku knew or should have known about the 317 Patent and its infringement of that patent, as discussed above, but continued to engage in the using, making, offering to sell, and/or selling of the Roku Streaming Players or Roku TVs despite an objectively high likelihood that this conduct would infringe the 317 Patent. Roku's infringing activities will continue to injure UEI unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further direct and indirect infringement of the 317 Patent. If Roku's conduct is not stopped, UEI will continue to suffer competitive harm, irreparable injury, and significant damages. Because UEI has no adequate remedy at law, UEI seeks, in addition to damages, preliminary and permanent injunctive relief. UEI competes to supply remote control technology to companies like Roku and will continue suffering irreparable harm absent injunctive relief

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff UEI respectfully requests relief and judgement against the Defendant, Roku, Inc., as follows:

1.   An entry of judgment in favor of UEI and against Roku;

2.   An award of damages adequate to compensate UEI for Roku's direct infringement and indirect infringement of U.S. Patent Nos. 7,969,514; 9,641,785; 10,325,486; 10,593,196; and 10,600,317.

3.   A preliminary and permanent injunction against Roku and its officers, directors, employees, agents, consultants, contractors, suppliers, distributors, and all others acting in concert or privity with Roku from further infringement of the Patents-in-Suit;

COMPLAINT FOR PATENT INFRINGEMENT

4. If an injunction is denied, an award of an ongoing royalty;

5. An award of treble damages to UEI as a result of Roku's willful infringement;

6. An award of prejudgment interest;

7. A finding that, with respect to Roku, this case is exceptional and awarding to UEI its reasonable costs and attorney fees under 35 U.S.C. § 285;

8. All other costs and fees awardable by law; and

9. Such other relief that the Court sees as just and proper.

**JURY DEMAND**

10. UEI hereby demands a jury trial on all causes of action, claims, and issues so triable as a matter of right.

Respectfully submitted this 9th day of April, 2020.

By: */s/ Ryan W. Koppelman*

Ryan W. Koppelman (SBN 290704)
Michael J. Newton (SBN 156225)
Katherine G. Rubschlager (SBN 328100)
**ALSTON & BIRD LLP**
950 Page Mull Road
Palo Alto, CA 94304
Telephone: (650) 838-2000
Facsimile: (650) 838-2001
ryan.koppelman@alston.com
mike.newton@alston.com
katherine.rubschlager@alston.com

Evan W. Woolley (SBN 286385)
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
evan.woolley@alston.com

Thomas W. Davison (to be admitted *pro hac vice*)
**ALSTON & BIRD LLP**
950 F Street NW

39

Washington, DC 20004
Telephone:   (202) 239-3300
Facsimile:   (202) 239-3333
tom.davison@alston.com

*Attorneys for Plaintiff*
*Universal Electronics Inc.*

COMPLAINT FOR PATENT INFRINGEMENT